PICKETT, Judge.
This is a workmen’s compensation action arising out of an accident that occurred on December 18, 1969. The plaintiff-appellant on this appeal contests the trial court’s finding that he had fully recovered from any disability by June 22, 1970, and urges that he was still totally and permanently disabled at the time of the trial.
It is not disputed that Matthew Johnson sustained an injury to his lower back in an accident covered by the workmen’s compensation act. The issue is the interpretation of the medical testimony. Some doctors who examined him concluded that he was free from any disability and was able to return to work as a laborer. Others were of the opinion that he continued to be disabled due to either a lumbosacral sprain or a herniated intervertabral disc with nerve involvement. These various examinations took place from time to time from the day after the accident until the trial on the merits in May of 1973. The trial court in fact ordered an additional examination after the trial before giving written reasons for judgment.
The trial judge relied on the opinions of Dr. William E. Smith and Dr. Kenneth C. Cranor, both orthopedic surgeons, in determining the period of disability. Dr. Smith saw the plaintiff on March 31, 1970, and testified that his examination was completely negative, except that Johnson complained of back pain even with light pressure. His gait, attitudes of the spinal column, lordosis, leg raise test and x-rays were all normal, and there were no muscle spasms, scoliosis or palpable masses found. Dr. Smith saw Johnson some eighteen months later with essentially the same results. He testified that symptoms can come and go with a back injury but that something objective should be discoverable on occasions when the patient complains of pain, and Johnson had complained of pain on both occasions. Dr. Smith felt both times that Johnson was able to work as a laborer.
Dr. Cranor saw Johnson eleven times between April 17, and November 20, 1970. His diagnosis was that Johnson had suffered a lumbosacral sprain but the examinations were completely negative for neurological or disc involvement. The difficulty was mechanical in nature. He was the doctor who specifically stated that Johnson should return to light work on June 8, 1970, and resume his regular work on June 22, 1970.
At this point we note an inconsistency in the trial judge’s reliance on Dr. Smith’s opinion in determining the length of disability. Dr. Smith found no disability as of March 31, 1970, but the trial judge obviously believed Dr. Cranor’s opinion that Johnson did have a disabling condition on and after April 17, 1970.
With respect to the June 22, 1970 date, Dr. Cranor did not discharge Johnson at that time but continued to see him. He actually discharged him on September IS, and again recommended that he return to *859 work. But he explained that he considered the following factor:
“I felt like there was nothing else to be gained by inactivity and that, at the worst, activity would either precipitate and aggravate any occult condition that I couldn’t diagnose at that point that was still he felt like was “disabling him, or it would make him better. I felt that there was no longer any therapeutic value to inactivity and I suspected very much that exercise and activity would actually be a help.”
Dr. Cranor then saw Johnson again on November 19 and December 21, 1970, and the examinations were negative. We think that Dr. Cranor’s testimony does not support the conclusion that Johnson had fully recovered by June 22, 1970. As of September 15, 1970, Dr. Cranor still believed there was in fact some difficulty. We take his testimony to mean Johnson recovered by December 21, 1970, from the mechanical or muscle involvement resulting from the accident.
This is consistent with the testimony of Dr. William M. Moody, a general practitioner, who saw Johnson eight times between August 25 and December 16, 1970. He felt during that time that Johnson could return to light work, and his report of December 30, 1970, stated that Johnson had “fully recovered.”
The first indication of possible neurological or disc trouble was found in February of 1971 by Dr. Kenneth Briggs, whose report was introduced into evidence. From this point on, the medical evidence is quite conflicting. Dr. Briggs’ report states that an x-ray showed a narrowing disc space and that he found slight scoliosis and a definite right paravertebral muscle spasm, suggesting disc problems.
However, Dr. Richard B. Means, Jr., a specialist in orthopedics, saw Johnson on March 30, 1971, and his x-rays were normal. The neurological tests were negative and Dr. Means was of the opinion that Johnson had suffered a lumbosacral strain but had recovered and could work as a laborer.
Then in September of 1971, we have more conflicting evidence. Dr. Moody, on September 9, 1971, found Johnson was having sciatic nerve disturbance down his right leg and recommended that he see a specialist.
Drs. Means and Smith, both orthopedic specialists, saw him on September 17, and 22, 1971, respectively, with completely negative results. Dr. Means again found the x-ray to be normal.
Eventually, on December 14, 1971, two years after the accident, Dr. Homer D. Kirgis, of the Ochsner Clinic, made a positive diagnosis of a ruptured intervertebral disc and suggested that Johnson be hospitalized for a myelogram. This was not done, however, and Dr. Kirgis did not see Johnson again until after the trial, when his examination showed that Johnson was practically asymptomatic.
On the basis of the medical testimony as a whole, we can not say the plaintiff has proved by a preponderance of the evidence that any disc pathology he may have had in December of 1971 is referable to the accident in December, 1969. As stated above, the evidence supports the finding that the accident caused a mechanical disability, a lumbosacral sprain, from which Drs. Cranor and Moody said he had fully recovered by December 20, 1970.
Accordingly, the trial court’s judgment is amended to extend the period for which the defendants are liable to the plaintiff for workmen’s compensation payments and medical expenses from December 18, 1969, to December 20, 1970, with credit for the amounts paid. Costs of this appeal to be paid by defendants-appellees.
Amended and rendered.